**PUBLISH**

UNITED STATES COURT OF APPEALS

**Filed 6/4/96**

TENTH CIRCUIT

―――――――――――――――――――

| | |
|---|---|
| TAMMIE JOHNSON, ELIZABETH YORK, JUDY O'CONNOR, PATRICIA CAUDILL, | ) |
| | ) |
| | ) |
| Plaintiffs-Appellees, | ) |
| | ) |
| v. | )   No. 95-1075 |
| | ) |
| BOARD OF COUNTY COMMISSIONERS FOR THE COUNTY OF FREMONT; BOB CHEEK, in his official capacity, | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |
| CATHY GREER, THE LAW FIRM OF HALL & EVANS, | ) |
| | ) |
| | ) |
| Movants-Appellants. | ) |

―――――――――――――――――――

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. Nos. 93-K-2465, 93-K-2466, 93-K-2467 and 93-K-2468)

―――――――――――――――――――

Submitted on the briefs:

Richard C. LaFond, Terry Clausen, and Arnold M. Woods, of LaFond & Clausen, L.L.C., Denver, Colorado, for Plaintiffs-Appellees.

Cathy H. Greer, Alan Epstein, and Josh Marks, of Hall & Evans, L.L.C., Denver, Colorado, for Movants-Appellants.

―――――――――――――――――――

Before **BRORBY** and **BARRETT**, Circuit Judges, and **BRIMMER**,[*] District Judge.

―――――――――――――――

[*] The Honorable Clarence A. Brimmer, United States District Judge for the District of Wyoming, sitting by designation.

**BRORBY**, Circuit Judge.

_____

Attorney Cathy Greer and the law firm of Hall & Evans appeal from an order finding that Attorney Greer violated the Colorado Rules of Professional Conduct by representing defendant Bob Cheek in his official capacity only. We affirm, although we apply a different analysis than the district court.[1]

### I. Factual & Procedural Background

Mr. Cheek was at all relevant times sheriff of Fremont County, Colorado. While Mr. Cheek was serving as sheriff, four female employees of the Fremont County Sheriff's Department commenced actions against the Board of County Commissioners for the County of Fremont, claiming Mr. Cheek had sexually harassed them in violation of Title VII of the Civil Rights Act of 1964. The board answered, stating it had no legal responsibility for actions of the sheriff's department.

Plaintiffs filed amended complaints adding Mr. Cheek as a defendant to their Title VII claims. The caption listed Mr. Cheek as a defendant in his official capacity. Attorney Greer answered on behalf of Mr. Cheek in his official capacity as sheriff of Fremont County. On June 17, 1994, plaintiffs filed second amended complaints adding a claim under 42 U.S.C. § 1983, and

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

naming Mr. Cheek as a defendant in both his official and individual capacities. These complaints alleged that Mr. Cheek's actions were taken "both inside and outside the scope of his authority." Mr. Cheek filed answers in his official capacity, asserting as a defense that "[t]he actions complained of by plaintiff[s] were not taken pursuant to any official custom[,] policy or practice."

On July 29, 1994, Mr. Cheek in his individual capacity and pro se, moved for an extension of time to answer because he was seeking declaratory relief from state court to determine whether the Board of County Commissioners would provide counsel to represent him in his individual capacity. The district court granted the extension.

On September 16, 1994, because the state court had not yet ruled, Mr. Cheek moved for a second extension of time to file an answer in his individual capacity. The district court denied the motion and ordered Attorney Greer to "show cause in writing ... why all pleadings filed on behalf of Mr. Cheek should not be stricken and under what legal authority [she] presumes to enter a limited appearance on behalf of a party of record."

Attorney Greer filed a response. She explained that there is a distinction between individual and official capacity suits in that in an official capacity suit, the real party in interest is the governmental entity whereas in an individual capacity suit, liability is sought to be imposed against the individual governmental officer. She stated there are two separate defendants -- the government entity that employs Mr. Cheek (Mr. Cheek in his official capacity), and Mr. Cheek in his individual capacity. Further, as of January 1995, a successor to Mr. Cheek would be elected who would then

3

hold the office of sheriff and be represented by counsel.

On October 3, 1994, Mr. Cheek, appearing pro se, answered the second amended complaints in his individual capacity. He adopted all of the assertions in the answer filed by Attorney Greer, and added the additional affirmative defense of qualified immunity with respect to the claim for relief under § 1983.[2]

On October 19, 1994, Attorneys Theodore Halaby and Robert Liechty attempted to enter appearances for Mr. Cheek in his individual capacity. At the hearing held that day, the district court struck all entries of appearances, including Attorney Greer's, and gave Mr. Cheek an additional thirty days to answer the second amended complaint, either pro se or with an attorney or attorneys representing him in both his capacities.

In a subsequently issued published decision, the district court stated that, although a person may be sued in more than one capacity, that did not mean an attorney may limit his or her appearance to only one of those capacities. *Johnson v. Board of County Comm'rs*, 868 F. Supp. 1226, 1230 (D. Colo. 1994). Reasoning that a party with an attorney of record may appear only through that attorney, the district court determined that by entering an appearance on behalf of Mr. Cheek in his official capacity, Attorney Greer precluded him from appearing pro se or from retaining other counsel for the individual capacity claims. *Id.* at 1230. The court concluded that by representing

---

[2] Mr. Cheek later admitted to the district court that the documents he filed in his individual capacity and pro se, although signed by him, were ghostwritten by the Fremont county attorney.

Mr. Cheek only in his official capacity, Attorney Greer left him exposed on the claims against him in his individual capacity and therefore violated Colorado Rules of Professional Conduct, Rule 1.1, which requires that a lawyer "provide competent representation to a client." *Id.* at 1231. While the court recognized that Colorado Rules of Professional Conduct, Rule 1.2(c) permits a lawyer to "limit the objectives of the representation if the client consents after consultation," it noted a client may not be asked to agree to representation so limited in scope as to violate Rule 1.1. *Id.*

In reaching its conclusion Attorney Greer had not satisfied her obligations under the Colorado Rules of Professional Conduct, the district court also made the following findings:

> It is not clear who has requested Greer to represent Cheek. The record is silent on this matter. There is no indication that Cheek, whom Greer ostensibly represents, has demanded that his representation be bifurcated....
>
> It is clear, however, that Greer has been instructed by someone not appearing before the court to represent Cheek only insofar as he holds the official title of Sheriff of Fremont County....
>
> ....
>
> Whether Greer consulted with Cheek to obtain his consent to such limited representation is not apparent on the information of record.

*Id.* at 1230-31.[3]

The attorneys filed a petition for writ of mandamus challenging the order. We denied the petition. *Cheek v. Kane*, No. 94-1524 (10th Cir. Nov. 29, 1994). The parties settled the underlying

---

[3] The court was also critical of the practice of attorneys ghostwriting for pro se litigants. However, Attorney Greer did not engage in that conduct, and this aspect of the court's ruling is not at issue in this appeal.

action, and the cases were dismissed with prejudice. The attorneys then filed this appeal. We ordered the parties in this appeal to submit briefs addressing whether the appeal should be dismissed as moot based on the settlement of the underlying action.

## II. Analysis

### A. Mootness

We will dismiss an appeal as moot if it is impossible for this court to grant the appellant any effectual relief whatsoever. *In re Material Witness Warrant Nichols*, 77 F.3d 1277, 1279 (10th Cir. 1996).

We held in *G.J.B. & Assocs., Inc. v. Singleton*, 913 F.2d 824, 827 (10th Cir. 1990), that a sanctions order against an attorney currently of record is not immediately appealable as a final judgment where the underlying controversy is unresolved. Further, such an order is not appealable under the collateral order exception to the final judgment rule because it could be appealed by the attorney at the conclusion of the underlying case, even if the parties settle or elect not to appeal. *Id.* at 827-29.

In *United States v. Dickstein*, 971 F.2d 446 (10th Cir. 1992), we addressed whether an attorney who no longer was involved in the underlying action because his pro hac vice status had been revoked could take an immediate appeal from the revocation order, even though the underlying case had not been concluded. We held the attorney could not because the order was not a final judgment. *Id.* at 448. Further, because the attorney was seeking an appeal only to vindicate his

6

reputation, rather than to be allowed to continue representing his client, we saw no reason why the order could not effectively be reviewed on appeal from the final judgment. *Id.* at 451. Even the former client's acquittal would not render the revocation order unreviewable at the conclusion of the underlying case. *Id.* Thus, the order was not appealable under the collateral order exception to the final judgment rule. *Id.*

These cases establish that settlement of an underlying case does not preclude appellate review of an order disqualifying an attorney from further representation insofar as that order rests on grounds that could harm his or her professional reputation.[4] We therefore conclude the appeal is not moot insofar as the district court's order found that Attorney Greer had violated the Colorado Rules of Professional Conduct. *See Kirkland v. National Mortgage Network, Inc.*, 884 F.2d 1367, 1370 (11th Cir. 1989) (holding challenge to order disqualifying attorney was not moot, despite dismissal of underlying case, where order's "brand of disqualification" on grounds of dishonesty and bad faith could hang over attorney's name and career for years). That the underlying cases were dismissed pursuant to a stipulation for dismissal with prejudice has no effect on the attorneys' right to appeal because they were not parties to the stipulation. *Cf. Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 526 (10th Cir. 1992).

## B. Merits

Attorney Greer contends separate legal representation is required where there are claims

---

[4] An attorney would lack standing to challenge the order insofar as it affected only his or her client's rights. *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993).

against a public official in both his official and individual capacities that create a potential for conflicting defenses.

When a governmental official is sued in his official and individual capacities for acts performed in each capacity, those acts are "treated as the transactions of two different legal personages." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 543 n.6 (1986) (internal quotation marks omitted). Thus, a person sued in his official capacity has no stake, as an individual, in the outcome of the litigation. *Id.* at 543-44. Personal or individual capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law," while an official capacity suit is "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal quotation marks omitted). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," and not as a suit against the official personally, "for the real party in interest is the entity." *Id.* at 166.

The distinctions between suits against an official in his individual and official capacities give rise to differing and potentially conflicting defenses. Most notably, the government entity could defend itself by asserting that the official whose conduct is in question acted in a manner contrary to the policy or custom of the entity. *See id.* at 166. Also, an individual capacity defendant could assert the defense of qualified immunity. *See Dunton v. County of Suffolk*, 729 F.2d 903, 907 (2d Cir.) (explaining potential conflicts between defenses of municipality and its employees in § 1983 action).

Given the potential conflict between the defenses available to a government official sued in his individual and official capacities, we have admonished that separate representation for the official in his two capacities is a "wise precaution." *Medina v. Housing Auth. of San Miguel County*, No. 91-2094, 1992 WL 218990 at *3 (10th Cir. Sep. 4, 1992) (unpublished order and judgment). Although we did not hold that the potential for conflict mandates separate representation, we did hold it was not error to allow separate representation. *Id.* at *4. While some courts have held separate representation is required in the face of the potential conflict, *see, e.g., Ricciuti v. New York City Transit Auth.*, 796 F. Supp. 84, 88 (S.D.N.Y. 1992); *Shadid v. Jackson*, 521 F. Supp. 87, 90 (E.D. Tex. 1981), we decline to adopt a per se rule. We hold that when a potential conflict exists because of the different defenses available to a government official sued in his official and individual capacities, it is permissible, but not required, for the official to have separate counsel for his two capacities. *See Silva v. Witschen*, 19 F.3d 725, 732 (1st Cir. 1994); *Richmond Hilton Assocs. v. City of Richmond*, 690 F.2d 1086, 1089 (4th Cir. 1982); *Clay v. Doherty*, 608 F. Supp. 295, 303 (N.D. Ill. 1985). Obviously, if the potential conflict matures into an actual material conflict, separate representation would be required. *See Dunton*, 729 F.2d at 907-08; *Clay*, 608 F. Supp. at 303; Model Rules of Professional Conduct, Rule 1.7.

Though separate representation is permissible, an attorney may not undertake only the official capacity representation at his or her sole convenience. Under Colorado Rules of Professional Conduct, Rule 1.2(c), a lawyer may limit the objectives of her representation only "if the client consents after consultation." In the case where an attorney has been hired to represent a government official in only his official capacity in a suit where the official is also exposed to liability in his

9

individual capacity but has no representation in that capacity, this rule serves an important function. When adhered to properly, the rule ensures the defendant is adequately informed about the workings of 42 U.S.C. § 1983 and the potential conflict between the defenses he may have in his separate capacities. Above all else, the attorney and the district court should ensure the official is not under the impression that the official capacity representation will automatically protect his individual interests sufficiently. Courts have recognized a "need for sensitivity" to the potential for conflict in this area, and have advised that "[t]he *bar* should be aware of potential ethical violations and possible malpractice claims." *Gordon v. Norman*, 788 F.2d 1194, 1199 n.5 (6th Cir. 1986) (quotation omitted). In the service of these interests, we embrace the Second Circuit's procedure whereby counsel notifies the district court and the government defendant of the potential conflict, the district court determines whether the government defendant fully understands the potential conflict, and the government defendant is permitted to choose joint representation. *See Kounitz v. Slaatten*, 901 F. Supp. 650, 659 (S.D.N.Y. 1995). In addition, the defendant should be told it is advisable that he or she obtain independent counsel on the individual capacity claim. We reinforce that, as with many issues relating to the relationship between attorney and client, the crucial element is adequate communication.

> In the instant case, the district court found:
>
> It is not clear who has requested Greer to represent Cheek. The record is silent on this matter. There is no indication that Cheek, whom Greer ostensibly represents, has demanded that his representation be bifurcated....
>
> It is clear, however, that Greer has been instructed by someone not appearing before the court to represent Cheek only insofar as holds the official title of Sheriff of Fremont County....

....

Whether Greer consulted with Cheek to obtain his consent to such limited representation is not apparent on the information of record.

*Johnson*, 868 F. Supp. at 1230-31.

Our review of the record confirms these observations. The district court concluded Attorney Greer "left Cheek exposed on those claims which can be sustained against him in his individual capacity." *Id.* at 1231. Given that Attorney Greer has not demonstrated that she consulted with Mr. Cheek about the mechanics of § 1983 and the exposure he was facing in his individual capacity or brought the matter to the district court's attention, we are not prepared to hold the district court erred in its finding Attorney Greer failed to satisfy her obligations to Mr. Cheek.

The decision of the district court is **AFFIRMED**, but the reasoning and analysis in *Johnson*, 868 F. Supp. 1226, are disapproved to the extent they conflict with our opinion.